## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re:
ANGELA COLEY TOLES                CASE NO: 14-31622
AKA ANGELA COLEY                  CHAPTER: 13
Debtor

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF SECTION 362, OR IN THE ALTERNATIVE, ADEQUATE PROTECTION BY NATIONSTAR MORTGAGE LLC

**COMES NOW** Nationstar Mortgage LLC, (hereinafter sometimes referred to as "Movant"), a secured creditor in this proceeding, by and through its attorneys of record and hereby moves this Honorable Court to enter an Order granting to Movant relief from Section 362 of the United States Bankruptcy Code so as to permit the foreclosure of the mortgage in favor of Movant upon the real property securing its claim and as grounds for said motion, Movant states as follows:

1. On June 25, 2014, the Debtor, Angela Coley Toles aka Angela Coley, filed a petition with the Bankruptcy Court for the Middle District of Alabama under Chapter 13 of Title 11 of the United States Code.

2. On the date the petition was filed, the Debtor was the owner of real property with an address of 3640 Oak Shadow Ln, Montgomery, AL 36116 ("Property") and more particularly described in the Mortgage referred to below.

3. Said Property is subject to the first lien of the Movant as evidenced by the Mortgage recorded in the Office of the Judge of Probate of Montgomery County, Alabama, ("Mortgage"), a true and correct copy of which is attached hereto as "Exhibit 1".

4. Said Mortgage secures a Note now held by Nationstar Mortgage, LLC, in the original principal amount of $96,425.00, dated September 26, 2005 ("Note"), a true and correct copy of which is attached hereto as "Exhibit 2".

5. Said Note and Mortgage have been transferred and assigned to Nationstar Mortgage, LLC.

6. Pursuant to Confirmation Order entered by this Court, the Debtor was to remit the regular monthly payments directly to Nationstar Mortgage, LLC

7. The Debtor has defaulted in the payment of the mortgage payments to be made outside of the plan. Upon information and belief, the amount of the default, exclusive of attorney fees and costs, is as follows:

    3 payments at $722.59                          $2,167.77
    February 1, 2015 To April 1, 2015
    Less Suspense                               $ (116.17)
    TOTAL PAYMENTS DUE                $2,051.60

8. Attached hereto is a post-petition payment ledger of all direct payments received from the Debtor.

9. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

10. The approximate payoff is $84,696.83 as evidenced by the affidavit in support of this Motion filed contemporaneously herewith.

11. Based upon the Schedules filed by the Debtors, the value of said Property is $93,500.00, to which Movant would request this Court take judicial notice. Thus, there is no appreciable equity with respect to said Property and the same is burdensome to this estate.

12. Due to the default in direct payments, as required under the Confirmation Order, Nationstar Mortgage, LLC, is entitled to relief from the Automatic Stay pursuant to Section 362(d)(1) of the Bankruptcy Code for cause shown including, but not limited to, lack of adequate protection.

13. If Movant is not granted relief from the automatic stay, it will suffer irreparable harm and injury.

14. This motion shall serve as notice to the Debtor that the Movant will collect reasonable attorney fees and costs as allowed by the Note and Mortgage.

**WHEREFORE,** Nationstar Mortgage, LLC requests that this Court enter an Order:

1. Terminating the Automatic Stay pursuant to Section 362(d) of the Bankruptcy Code so as to permit Nationstar Mortgage, LLC to proceed with foreclosure of said Property securing its claim in accordance with its mortgage and the Alabama Code and thereafter amend its claim for the deficiency which may thereafter remain.

2. In the alternative, granting adequate protection to Nationstar Mortgage, LLC for its interest by requiring the immediate payment of the past due amount and further modifying the automatic stay to conditionally terminate upon a future default in said direct regular monthly payments required under said Note.

3. Modifying Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure so that it is not applicable in this case so that Nationstar Mortgage, LLC may immediately enforce and implement this Order terminating the automatic stay.

4. Modifying Rule 3002.1(b) and Rule 3002.1(c) of the Federal Rules of Bankruptcy Procedure so that it is not applicable in this case and so Nationstar Mortgage, LLC may not be required to file a Notice of Mortgage Payment Change, a Notice of Post-Petition Fees, Expenses and Charges and/or a response to the Trustee's Notice of Final Cure.

5. Granting Nationstar Mortgage, LLC reasonable costs and attorney fees incurred in connection with this proceeding; and

6. Authorizing Movant, or its agents, to have limited contact with the Debtor by telephone or written correspondence and, and at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.

7. Granting such other and further relief to which Nationstar Mortgage, LLC may be entitled.

8. The Movant further requests that this Court require the Debtor to obtain court approval of any future agreements or modifications which increase or reduce the Debtor's disposable income and/or which affect the ability of the Debtor to perform under the Chapter 13 Plan.

This the 15th day of May, 2015.

/s/ _____Jackson E. Duncan, III_____
Attorney for Creditor

OF COUNSEL:
SHAPRIO & INGLE, LLP
2151 Highland Avenue
Suite 1150
Birmingham, Alabama 35205
205-443-0081
Email: jaduncan@logs.com
File No. 15-007008

**IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA**

In re:
**ANGELA COLEY TOLES**           **CASE NO: 14-31622**
**AKA ANGELA COLEY**            **CHAPTER: 13**
**Debtor**

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing and annexed pleading or paper upon:

| (Served via U.S. Mail) | (Served via Electronic Notification Only) | (Served via Electronic Notification Only) |
|---|---|---|
| Angela Coley Toles aka Angela Coley<br>3640 Oak Shadow Lane<br>Montgomery, AL 36116 | Richard D. Shinbaum<br>P.O. Box 201<br>Montgomery, AL 36101 | Curtis C. Reding<br>P.O. Box 173<br>Montgomery, AL 36101 |

by depositing the same in a postpaid wrapper properly addressed to each such party or his attorney of record in a post office or other official depository under the exclusive care and custody of the United States Postal Service and/or by electronic mail, if applicable.

This the 15th day of May, 2015.

                                         */s/ Jackson E. Duncan, III*
                                         Jackson E. Duncan, III (DUN027)
                                         Attorney for Creditor
                                         10130 Perimeter Parkway
                                         Suite 400
                                         Charlotte, NC 28216
                                         704/333-8107

15-007008

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| IN RE: <br><br> ANGELA COLEY TOLES AKA ANGELA COLEY <br><br> DEBTOR. <br><br> MOTION OF: <br><br> NATIONSTAR MORTGAGE LLC | Chapter: 13 <br><br> CASE NO. 14-31622 |

STATE OF Texas

COUNTY OF Denton

## AFFIDAVIT

BEFORE ME, the undersigned, Notary Public, personally appeared Authorized Signer **Chasity Wilson**, who is known to me and after being by me first duly sworn, deposes and says the following:

In the regular performance of my job functions for Nationstar Mortgage LLC, I am familiar with the business records maintained by Nationstar Mortgage LLC for the purpose of servicing mortgage loans, collecting payments and pursuing any delinquencies. Nationstar Mortgage LLC's servicing records typically include electronic data compilations and imaged documents pertaining to the loans it services. This mortgage loan shows the following:

| Property Description: | 3640 Oak Shadow Ln, Montgomery, AL 36116 |
|---|---|
| Collateral Value Per Schedule D: | $93,500.00 |
| Date of Default: | February 1, 2015 |

| | |
|---|---|
| Payments for February 1, 2015 - April 1, 2015 @ $722.59 each: | $2,167.77 |
| Suspense Credit: | $116.17 |
| Reinstatement Amount: | $2,051.60 |
| Estimated Payoff Amount Through April 27, 2015: | $84,696.83 |
| MFR Attorney Fee: | $550.00 |
| MFR Filing Fee: | $176.00 |
| Total Amount Due: | $85,422.83 |

_Chastity Wilson_
Signature
Chastity Wilson
Print Name
Assistant Secretary
Title

STATE OF __Texas__
COUNTY OF __Denton__
SUBSCRIBED AND SWORN TO
Before me this __12th__ day of __May__, __2015__.

_R. Bryan_
Notary Public
My commission expires: __December 19, 2018__

This instrument prepared by:
Jackson E. Duncan, III
Shapiro and Ingle, LLP
10130 Perimeter Parkway, Suite 400
Charlotte, NC 28216
15-007008

RAQUEL A. BRYAN
Notary Public, State of Texas
My Commission Expires
December 19, 2018

RLPY 03191 PAGE 0696

Reli, Inc.,
the TITLE and CLOSING PROFESSIONALS
4137 Carmichael Road, Ste 120
Montgomery, AL 36106

Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423



Exhibit 1

[Space Above This Line For Recording Data]

[Case #]   [Doc ID #]

State of Alabama     **MORTGAGE**     FHA Case No.

MIN

THIS MORTGAGE ("Security Instrument") is given on SEPTEMBER 26, 2005. The Grantor is
ANGELA C TOLES, AN UNMARRIED WOMAN

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
COUNTRYWIDE HOME LOANS, INC.
("Lender") is organized and existing under the laws of NEW YORK                    , and has an address of
4500 Park Granada, Calabasas, CA 91302-1613
Borrower owes Lender the principal sum of
NINETY SIX THOUSAND FOUR HUNDRED TWENTY FIVE and 00/100

Dollars (U.S. $ 96,425.00      ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on OCTOBER 01, 2035    . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in MONTGOMERY                        County, Alabama:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

THIS IS A PURCHASE MONEY MORTGAGE.
Parcel ID Number: 0310073501007007044

FHA Alabama Mortgage with MERS - 4/96        Page 1 of 6                       Initials: ACJ
VMP-4N(AL) (0305)   CHL (07/04)(d)    VMP Mortgage Solutions, Inc. (800)521-7291            Amended 2/01

RLPY 03191 PAGE 0697

CASE #: ▓▓▓▓▓▓▓▓  DOC ID #: ▓▓▓▓▓▓▓▓

which has the address of  3640 OAK SHADOW LN, MONTGOMERY,
[Street, City]

Alabama 36116-1955 ("Property Address");
[Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns, and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

Initials: 

CASE #: A                                                          DOC ID #:

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

Initials: 

CASE #: A[redacted]     DOC ID #: [redacted]

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Initials: 



RLPY 03191 PAGE 0700

CASE #: ███████████           DOC ID #: ███████████

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 13. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in MONTGOMERY County, Alabama, and there upon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

☐ Condominium Rider    ☐ Growing Equity Rider    ☐ Other [specify]
☐ Planned Unit Development Rider    ☐ Graduated Payment Rider

Initials: 

VMP®-4N(AL) (0305)    CHL (07/04)    Page 5 of 6

RLPY 03191 PAGE 0701

CASE #: ▓▓▓▓▓▓▓▓▓▓   DOC ID #: ▓▓▓▓▓▓▓▓▓▓

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____   *Angela C. Toles* _____ (Seal)
                             ANGELA C. TOLES                  -Borrower

_____   _____ (Seal)
                                                              -Borrower

                            _____ (Seal)
                                                              -Borrower

                            _____ (Seal)
                                                              -Borrower

STATE OF ALABAMA,   Montgomery   County ss:

On this __26th__ day of __September__, __2005__, I, the undersigned authority, a Notary Public in and for said county and in said state, hereby certify that __Angela C. Toles__ _____

_____, whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this __26th__ day of __September__, __2005__.

My Commission Expires: 6/17/09

*[signature]*
Notary Public

[Seal: NAN N. STINSON / NOTARY PUBLIC / ALABAMA STATE AT LARGE]

This instrument was prepared by
ANGELICA MATARRESE
COUNTRYWIDE HOME LOANS, INC.
2542 EASTERN BLVD, MONTGOMERY, AL 36117

-4N(AL) (0305)   CHL (07/04)   Page 6 of 6

RLPY 03191 PAGE 0702

EXHIBIT "A"

Lot 36, Block 51, according to the map of Carriage Hills Plat "I" as same appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 30 at page 183.

STATE OF ALA.
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON
RLPY 03191 PG 0696-0702 2005 Oct 21
01:39PM
REESE MCKINNEY JR.
JUDGE OF PROBATE

| | |
|---|---|
| INDEX | $5.00 |
| REC FEE | $17.50 |
| CERT | $1.00 |
| MRTGAGE TAX | $144.75 |
| CHCK TOTAL | $168.25 |
| 635 | Clerk: SHAUNTE 02:07PM |

Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
2617 COLLEGE PARK
SCOTTSBLUFF, NE 69361

## CORPORATE ASSIGNMENT OF MORTGAGE

Montgomery, Alabama
SELLER'S SERVICING # ▓▓▓▓▓ "TOLES"

MIN #: ▓▓▓▓▓  SIS #: ▓▓▓▓▓

Date of Assignment: September 11th, 2014
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND/OR ASSIGNS at PO BOX 2026, FLINT, MI 48501
Assignee: NATIONSTAR MORTGAGE LLC at 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067

Executed By: ANGELA C TOLES, AN UNMARRIED WOMAN To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.
Date of Mortgage: 09/26/2005 Recorded: 10/21/2006 in Book/Reel/Liber: 03191 Page/Folio: 0696 In the County of Montgomery, State of Alabama.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $96,425.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND/OR ASSIGNS
On 9/11/2014

By: _____
Melissa Kersenbroek
, Assistant Secretary

[MERS CORPORATE SEAL 1999 DELAWARE]
Unauthorized

STATE OF Nebraska
COUNTY OF Scotts Bluff

On 9-11-2014, before me, Traci J Garton, a Notary Public in and for Scotts Bluff in the State of Nebraska, personally appeared Melissa Kersenbrock, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Traci J Garton
Notary Expires 10/25/2016

GENERAL NOTARY-State of Nebraska
TRACI J GARTON
My Comm. Exp. Oct. 25, 2016

(This area for notarial seal)

Prepared By: Cherri Palomo, Nationstar Mortgage 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361 1-888-480-2432

STATE OF ALA.
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON
RLPY 04620 PG 0448-0449 2014 Oct 07
02:33 PM
STEVEN L. REED
JUDGE OF PROBATE

| INDEX RTE_MORT_ASSIGN_ASSN "CPNATN" | $5.00 |
| REC FEE | $5.00 |
| CERT | $1.00 |
| CHECK TOTAL | $11.00 |

228399 Clerk: #103 02:33PM

Prepared by: ANGELICA MATARRESE

Exhibit 2

| Multistate | NOTE | FHA Case No. |
|---|---|---|
| LOAN #: | | |

SEPTEMBER 26, 2005
[Date]

3640 OAK SHADOW LN, MONTGOMERY, AL 36116-1955
[Property Address]

**1. PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means COUNTRYWIDE HOME LOANS, INC.
and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of
NINETY SIX THOUSAND FOUR HUNDRED TWENTY FIVE and 00/100

Dollars (U.S. $ 96,425.00      ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE & THREE-QUARTERS
percent (   5.750  %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
   (A) Time
   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
 NOVEMBER 01, 2005   . Any principal and interest remaining on the first day of OCTOBER, 2035    , will be due on that date, which is called the "Maturity Date."
   (B) Place
   Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.
   (C) Amount
   Each monthly payment of principal and interest will be in the amount of U.S. $ 562.71        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
   (D) Allonge to this Note for payment adjustments
   If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

   ☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Page 1 of 2          FHA Multistate Fixed Rate Note 10/95
                     Initials:
VMP®-1R (0303)    CHL (12/04)(d)    VMP Mortgage Solutions, Inc. (800)521-7291

CASE # ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  LOAN # ▮▮▮▮▮▮▮▮▮▮

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

PAY TO THE ORDER OF
Countrywide Home Loans Servicing LP
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

PAY TO THE ORDER OF
_____
Without Recourse
Countrywide Home Loans Servicing LP

BY _____
David A. Spector
Managing Director

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Angela C. Toles_ (Seal)  _____ (Seal)
ANGELA C. TOLES  -Borrower   -Borrower

_____ (Seal)  _____ (Seal)
-Borrower    -Borrower

Exhibit 3

## Motion For Relief Information

Version #
Last Revised Date: 4/22/2015

### Loan Demographics

| Account Number | ▮ | Case Number | ▮ | Property Address | 3640 OAK SHADOW LN<br>MONTGOMERY AL 36116 |
|---|---|---|---|---|---|

### Bankruptcy Filing Information

Repeat Filer: No

| Filed By | Angela Coley Toles | Chapter Filed | Chapter 13 | Gov't Loan | Yes |
|---|---|---|---|---|---|
| | | Bankruptcy Filing Date | 6/25/2014 | POC Filing Date | 9/24/2014 |
| District | Middle District of Alabama (Montgomery) | | | 1st Post Due Date | 7/1/2014 |

Beneficiary (Action in the Name of): Nationstar Mortgage LLC

### First Borrower

| Name | ANGELA C TOLES | SSN | ▮ | Non-filing Co-Signer | ▮ |
|---|---|---|---|---|---|

### Second Borrower

| Name | | SSN | | Non-filing Co-Signer | |
|---|---|---|---|---|---|

| Payoff Figures as of: | 4/22/2015 | Delinquent Contractual/Post Petition Payments | | | | |
|---|---|---|---|---|---|---|
| | | Date Due | Amount Due (P&I and Escrow) | Principle & Interest | Escrow | Number of Months | Total Due |
| Unpaid Balance | $ 81,662.36 | | | | | | |
| Interest Amount | $ 1,565.20 | 2/1/2015 to 4/1/2015 | $ 722.59 | $ 562.71 | $ 159.88 | 3 | $ 2,167.77 |
| Interest Rate | 5.750% | | | | | | $ - |
| Per Diem | 13.04 | | | | | | $ - |
| Escrow Advance | $ 890.49 | | | | | | $ - |
| Corporate Advance | $ 650.00 | | | | | | $ - |
| NSF | | | | | | | $ - |
| Total Suspense* | $ 71.22 | | | | | | $ - |
| *Includes all Pre-Petition and Post - Petition Suspense | | Suspense** | $ 116.17 | | | | $ (116.17) |
| TOTAL | $ 84,696.83 | TOTAL | | | | | $ 2,051.60 |

**IF Chapter 13, will include Post Petition Suspense
**If Chapter 7, will include all suspense

### MFR Dates/Amount

| Contractual Due Date as per LSAMS | 2/1/2015 |
|---|---|
| Current Post Petition Due date as per Post Ledger | 2/1/2015 |
| Contractual/Post Petition Payment Amount Due (P&I and Escrow) | $ 722.59 |

### National Settlement Agreement*

Is this loan under the National Settlement Agreement?

*All loans acquired from Bank of America effective January 1, 2013.

### Other Information

| Property Treatment | Retain |
|---|---|
| Property Status | Secured |
| Motion for Dismissal Filing Date | No |
| Pending Discharge | No |
| Trustee Pay All | No |
| Loss Mitigation Status | Not Active |
| Interest Amount at the Time of Filing | $0.00 |

### Right to Foreclosure Language*

*Please include right to foreclose language in the Motion for Relief

All Motions for Relief from Stay shall include a statement that sets forth the basis for asserting that the applicable party has the right to foreclose.

**\*LM Status and copies of any and all available denial letters are required in CA**
**\*If referral for CA and NY, breakdown for Corp. Advances is required.  IF for OH, FL and MD,  breakdown for Corp Advances and Escrow Advances are required**
**\*If referral is for CA, CO and Northern District of Florida, then contractual payment history is needed for one year prior to the contractual due date.**

**Payment Address**
Nationstar Mortgage, LLC
PO Box 619094
Dallas, TX 75261-9741

All payments and mail should be addressed as
**ATTN: Bankruptcy Dept**

**Correspondence Address**
Nationstar Mortgage, LLC
PO Box 619096
Dallas, TX 75261-9741

### Comments

Last payment Received on 4/20/2015

Processed by: Kiran Prajapati

### Escrow Advances

| Escrow Account | Date | Recovery (Debit) | Advance (Credit) | Escrow Account | Date | Recovery (Debit) | Advance (Credit) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |